IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LENA M. NAVARRO,                         Case No. 6:14-cv-00811-AA
                                              OPINION AND ORDER
          Plaintiff,

     v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

          Defendant.

_____

Kathryn Tassinari
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
     Attorneys for plaintiff

Billy Williams
Interim United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 SW Third St Ave., Suite 600
Portland, OR 97201

Catherine Escobar
Special Assistant United States Attorney
Office of the General Council
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
     Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Lena Navarro brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for payment of benefits.

## PROCEDURAL BACKGROUND

On April 8, 2010, plaintiff filed her applications for DIB and SSI. Tr. 182, 186. After the applications were denied initially and on reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 133. On March 14, 2012, an ALJ hearing was held before the Honorable Stuart Waxman; plaintiff was represented by counsel and testified therein; a vocational expert ("VE") also testified. Tr. 13-47. On April 2, 2012, ALJ Waxman issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 103-113. After the Appeals Council declined review, plaintiff filed a complaint in this court. Tr. 100-102.

## STATEMENT OF FACTS

Born on June 20, 1970, plaintiff was 34 years old on the

Page 2 - Opinion and Order

alleged onset date of disability and 41 years old at the time of
the hearing. Tr. 13, 182, 186. Plaintiff dropped out of high
school after completing the tenth grade. Tr. 15, 221. She
previously worked as a gas station attendant, fast food worker,
cook helper, administrative clerk, and residence leasing agent.
Tr. 41-42. Plaintiff alleges she became disabled on September 1,
2004 due to degenerative disc disease, neuropathy, severe back
arthritis, shoulder bursitis, depression, weight gain, bilateral
carpal tunnel syndrome ("CTS"), pinched nerves in elbows,
dyslexia, and chronic pain.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is
based on proper legal standards and the findings are supported
by substantial evidence in the record. Hammock v. Bowen, 879
F.2d 498, 501 (th Cir. 1989). Substantial evidence is "more than
a mere scintilla. It means such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." Richardson v. Perales, 402 U.S. 389, 401
(1971)(quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229
(1938)). The court must weigh "both the evidence that supports
and detracts from the [Commissioner's] conclusions. Martinez v.
Heckler, 807 F. 2d 771, 772 (9th Cir. 1986).

Page 3 - OPINION AND ORDER

The initial burden of proof rests upon the plaintiff to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a plaintiff is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the plaintiff is not disabled.

At step two, the Commissioner determines whether the plaintiff has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the plaintiff is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §

Page 4 - Opinion and Order

416.920(d). If so, the plaintiff is conclusively presumed

disabled; if not, the Commissioner proceeds to step four.

Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the

plaintiff can still perform "past relevant work." 20 C.F.R. §

416.920(e). If plaintiff can work, she is not disabled. If she

cannot perform past relevant work, the burden shifts to the

Commissioner. At step five, the Commissioner must establish that

the plaintiff can perform other work that exists in the national

economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §

416.920(e)&(f). If the Commissioner meets this burden, the

plaintiff is not disabled. 20 C.F.R. § 416.966.

### THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process,

the ALJ found that plaintiff had not engaged in substantial

gainful activity since the application date. Tr. 105. At step

two, the ALJ determined that plaintiff has the following severe

impairments: spine syndrome, failed back syndrome or post

laminectomy syndrome, myalgia myositis, lumbago, tardy ulnar

palsy, status post left ulnar nerve transposition in June 2006,

status post right ulnar nerve transposition in September 2006,

degenerative disc disease of the lumbar spine with some central

Page 5 - OPINION AND ORDER

canal stenosis, status post laminectomies and fusion, lumbar radiculopathy, minimal degenerative changes of the thoracic spine, bilateral CTS, status post bilateral carpal tunnel releases, obesity, fibromyalgia, muscle spasm, a history of edema, and mild to moderate obstructive sleep apnea. Tr. 105-106. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 107.

As plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.9679(a), except that she should never climb ladders, ropes, scaffolds, ramps, or stairs; should never balance, kneel, crouch, or crawl; can occasionally stoop, push and/or pull bilaterally, reach overhead bilaterally; and should avoid all exposure to unprotected heights, walking on uneven terrain, and all use of "moving machinery." Tr. 107.

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as an administrative clerk. Tr. 111. Accordingly, the ALJ concluded that plaintiff was not

Page 6 - Opinion and Order

disabled within the meaning of the Act. Tr. 113.

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) not fully crediting her pain testimony, (2) failing to properly credit the opinion of Dr. Jeffrey Bert, and (3) finding plaintiff capable of performing her past relevant work.

## I. Plaintiff's Testimony

Plaintiff contends the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to reject her subjective symptom statements concerning the extent and severity of her impairments. When a plaintiff has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."[1] Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that plaintiff is not credible is insufficient; the ALJ "must state which . . . testimony is not

---

[1] The court notes defendant's contention that the "substantial evidence" rather than "clear and convincing" standard should be applied when assessing an ALJ's credibility findings. Def.'s Br. 5-6. The Ninth Circuit has repeatedly affirmed that the clear and convincing standard applies. See, e.g., Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Page 7 - OPINION AND ORDER

credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing a plaintiff's credibility, an ALJ may consider a range of factors, including ordinary techniques of credibility evaluation, such as (1) plaintiff's reputation for lying or prior inconsistent statements concerning symptoms; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) evaluation of plaintiff's daily activities. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014)(citing Smolen, 80 F.3d at 1284). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the plaintiff's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(citation omitted) However, when evidence supports either confirming or reversing an ALJ's decision, the court may not substitute its own judgment for that of the ALJ. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ found that objective medical evidence did not "fully support" plaintiff's alleged level of impairment. Tr. 108-109. The ALJ explained that although MRIs of plaintiff's lumbosacral and thoracic spine revealed abnormal findings, her

Page 8 - Opinion and Order

extreme symptoms were nonetheless disproportionate. Id. Once a plaintiff produces medical evidence of an underlying impairment, an ALJ may not discredit plaintiff's testimony regarding subjective symptoms merely because they are unsupported by medical evidence. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Thus, alone, the ALJ's rationale would not suffice. However, the ALJ also impugned plaintiff's credibility based on symptom magnification and self-limiting behaviors. Tr. 107-109. Self-limiting behaviors on examination, as well as symptom exaggeration, may detract from a plaintiff's credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

First, the ALJ indicated plaintiff demonstrated positive Waddell's signs on examination in March 2005. Tr. 288. Plaintiff references a medical journal abstract which states that Waddell's testing "does not distinguish between malingering and psychological conditions." Pl.'s Reply Br. 3 (citing Gordon Waddell et al., Nonorganic Physical Signs in Low-Back Pain, 5 Spine 117, 117-25 (Mar.-Apr. 1980)). Plaintiff further notes that in order to be deemed "clinically significant," three or more Waddell's signs must be detected on examination. Id. Although defendant cites one case that found detection of Waddell's signs potentially probative, the case is

Page 9 - OPINION AND ORDER

distinguishable, as there was no suggestion that fewer than three Waddell's signs were detected, as here. Tr. 288, See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001). More significantly, the examining physician did not assign any import to the findings. Tr. 287-89. Therefore, the ALJ's reason is not clear and convincing. See Reinertson v. Barnhart, 127 Fed.Appx. 285, 289 (9th Cir. 2005)(Where an examining physician reported two out of five Waddell's signs but did not assign any significance to them, the ALJ's conclusion that physician had documented "functional behavior" was not supported by substantial evidence.).

Next, plaintiff argues it was improper to use plaintiff's reported "somatization" to undermine her credibility. Pl.'s Reply Br. 4. Indeed, there are only two references to somatization in the record. In 2008, Dr. Rusu reported, "I expect there is a degree of somatization but I am not sure about the secondary gains . . . ." Tr. 584. In 2010, another physician, after reviewing Dr. Rusu's notes, indicated "[plaintiff] has some degree of somatization." Tr. 410. The physicians appeared to be inferring that plaintiff was exaggerating symptoms in order to obtain pain medication, and both discussed limiting plaintiff's access to narcotics. Tr.

Page 10 - Opinion and Order

410, 584. Nonetheless, neither the ALJ nor the treating doctors explicitly mentioned drug-seeking behavior, commented on the degree of any symptom exaggeration, or whether her "somatization" was willful deception or rather a psychiatric response consistent with somatization disorder. Further, the court notes that the two incidents where somatization disorder appears in the record were fairly isolated considering the seven-year relevant time period. Further, the defendant does not proffer any further evidence of somatization in support of the ALJ's findings. Accordingly, the ALJ's reference to isolated "possible somatization" is not a sufficient rationale to discount plaintiff's credibility.

The ALJ also questioned plaintiff's credibility because she missed medical appointments. Tr. 110. The parties agree plaintiff missed medical appointments on two occasions during the relevant time period. Pl.'s Reply Br. 5; Def.'s Br. 5; Tr. 570. Although failure to follow a prescribed course of treatment or an inadequately explained failure to seek treatment may impact credibility, plaintiff's absence from two appointments over a seven-year time period is not probative, particularly considering she provided reasons for her absences. Pl.'s Opening Br. 17; See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.

2008).

The ALJ next noted that plaintiff's ADL's, as reported by
plaintiff and her daughter, demonstrated functionality which
belied disability. Tr. 109, 242-48 250-56. The ALJ noted that
plaintiff is able to clean, watch television, cook, and provide
care for her granddaughter, who lives with her.[2] Tr. 109, 242-43.
Plaintiff, in her disability application, indicated she is able
to go out on her own, shop and handle money, get along with
others, pay attention and follow directions, and manage stress
and changes in her routine. Tr. 245, 247-48. At hearing,
plaintiff explained she rarely goes out on her own other than to
grocery shop, does not drive, has a state-provided assistant 20
hours per week to help with housekeeping and food preparation,
has trouble navigating the stairs to and from her apartment, and
uses a chair while in the shower. Tr. 32-36. Plaintiff's
daughter, who the ALJ generally found credible on this issue,
indicated that although plaintiff is able to clean and prepare
some meals, it takes several hours for her to do chores, and
even simple tasks such as laundry require assistance. Tr. 110,

---

[2] The court notes that although caring for a young child
suggests a certain level of functionality, the ALJ did not
provide specific examples of plaintiff's childcare duties which
were inconsistent with her alleged level of impairment. The fact
that plaintiff "cares" for a child is not sufficient, without
greater specificity, to impugn her credibility.
Page 12 – Opinion and Order

250-56.

Activities such as light household chores, grocery shopping, and occasional preparation of meals are activities that do not necessarily translate to a full-time work environment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Only if a plaintiff's level of activity is inconsistent with plaintiff's alleged limitations would such activities bear on credibility. Reddick v. Chater, 157 F.3d 715, 723 n.1 (9th Cir. 1998). Here, while plaintiff's activities reflect some functionality, the ALJ failed to identify inconsistencies between plaintiff's activities and her alleged level of impairment; he merely articulated plaintiff's fairly low activity level. Tr. 109. While the ALJ appeared to attach significance to plaintiff's willingness to care for her granddaughter, the ALJ did not provide detail on what aspect of caregiving was contradicted by plaintiff's allegations. Id. As such, the ALJ's failure to explain why plaintiff's testimony was inconsistent with her ADL's was reversible error. Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014).

Plaintiff further argues that the ALJ misinterpreted her alleged self-limiting behavior during some medical examinations. For example, in 2006, Dr. Bert reported plaintiff appeared to be

Page 13 - OPINION AND ORDER

voluntarily limiting her spine bending on examination due to pain. Tr. 109, 306. Dr. Alina Rizea indicated on two separate encounters in 2005 that plaintiff "would not bend" during examination, citing back pain. Tr. 316, 318. In 2012, an examining nurse reported plaintiff's performance on a neurological examination was inconsistent, and noted plaintiff may be "consciously limiting her responses." Tr. 722. In 2011, a nurse practitioner indicated plaintiff was "unwilling/unable to put shoulder through ROM" due to pain. Tr. 696.

Despite these incidents, not one of the physicians performing the examinations indicated that plaintiff was being uncooperative, and only one mentioned that plaintiff "may" have been consciously limiting herself. Tr. 291, 306, 316, 318, 585, 696, 722. That a plaintiff "may" have been consciously limiting herself during a single examination is not clear and convincing grounds to impugn a plaintiff's credibility. While the court recognizes that self-limiting behavior is generally a valid reason to discount a plaintiff's testimony pursuant to Thomas, unlike that case, the physicians here did not indicate plaintiff attempted to exaggerate her symptoms, exhibit dramatic pain behaviors, or was likely capable of significantly better performance. Tr. 290-291, 306, 316, 318, 584-85, 695-96, 721-23.

Page 14 - Opinion and Order

To the contrary, plaintiff's physicians, particularly after
2010, routinely noted plaintiff's history of back surgeries and
reports of extreme back pain, diagnosed back disorders, and
continued to prescribe medications to address her impairments.
Id.

Therefore, based on the record as a whole, the court does
not find that "possible" self-limiting behavior on a handful of
back examinations in the context of degenerative disc disease of
the lumbar spine, lumbago, spine syndrome, and failed back
syndrome (or post-laminectomy syndrome) to be determinative of
plaintiff's overall credibility. See Tr. 105-106. An ALJ's error
is harmless only so long as the ALJ provides valid reasons for
rejecting the evidence, substantial evidence supporting the
ALJ's credibility determination remains, and the error does not
negate the validity of the ultimate credibility conclusion.
Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th
Cir. 2008)(citations omitted). Here, the ALJ's rationales do not
withstand scrutiny; therefore, the credibility assessment is not
valid.

II. Dr. Bert's Opinion

The ALJ assigned little weight to Dr. Bert's opinion that
plaintiff was "unemployable," "completely disabled," and "fits

Page 15 - OPINION AND ORDER

the criteria for Social Security complete and total disability." Tr. 110, 496, 558. The ALJ further found that Dr. Bert's assessment was not consistent with the objective evidence, that the doctor relied heavily on plaintiff's own subjective complaints, and that the opinions were improper because the issue was reserved to the Commissioner. Tr. 110.

The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). Physicians may provide medical or clinical opinions, or they may provide opinions on the ultimate issue of disability. Reddick, 157 F.3d at 725. A medical source's conclusory statement that plaintiff is disabled or "unable to work" does not bind the Commissioner to find plaintiff is disabled. 20 C.F.R. § 404.1527(d)(1). However, opinions about the likelihood of disability are not conclusory. Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012). Generally, the ALJ should afford more weight to doctors who treat a plaintiff than those who do not. Lester, 81 F.3d 821, 830 (9th Cir. 1995). In resolving ambiguities in the medical record, an ALJ may reject the uncontradicted opinion of a treating doctor by providing clear and convincing reasons, supported by substantial evidence, to do so; the contradicted opinion of a treating doctor may be rejected by providing specific and legitimate reasons that are

supported by substantial evidence. <u>Orn v. Astrue</u>, 495 F.3d 625, 631-32 (9th Cir. 2007). When evaluating medical opinions, an ALJ is not required to accept an opinion that is brief, conclusory, and inadequately supported by objective findings. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may also reject the opinion of a doctor that is largely based on a plaintiff's self-reports when the plaintiff has been deemed not credible. <u>Tommasetti</u>, 533 F.3d at 1041.

The parties dispute whether Dr. Bert's opinion statements were conclusory. Pl.'s Opening Br. 19; Def.'s Br. 12. In 2010, Dr. Bert wrote that plaintiff was "unemployable." <u>Id.</u> Although Dr. Bert mentioned some probable causes of plaintiff's pain, his assertion that plaintiff was unemployable did not include any explanation or objective findings; therefore, the opinion was conclusory. 20 C.F.R. § 404.1527(d)(1). For the same reasons, the ALJ did not err in disregarding Dr. Bert's 2011 opinion that plaintiff was "completely disabled" and "fit[] the criteria for Social Security complete and total disability." Tr. 558.

Nevertheless, Dr. Bert provided other medical opinion evidence in February 2012 that was more detailed in describing various aspects of plaintiff's impairments. Tr. 735-37. Dr. Bert indicated via questionnaire that plaintiff's diagnoses were

Page 17 – OPINION AND ORDER

spinal stenosis at L2-3 and status post-fusion at L3-L5. Tr. 735. He indicated plaintiff experienced back and leg pain, would have to rest one hour per day, had weakness, should not drive, could stand and walk for less than 2 hours per day, could sit less than 6 hours per day, could occasionally lift up to ten pounds, could never lift 20 pounds or more, and would likely miss more than two days per month due to her impairments. Tr. 736-37. Defendant argues that Dr. Burt's 2012 opinion is invalid because it is unsupported by objective findings or explanation for the restrictions, and was based on plaintiff's subjective reports. Def.'s Br. 12.

While Dr. Bert's February 2012 opinion predominantly consists of 1-2 word answers and check-the-box responses, it nonetheless sets out necessary details that were lacking in the doctor's previous opinions. The 2012 opinion indicates plaintiff's diagnoses, symptoms, treatment plan (surgery at L2-3), and a functional assessment. Tr. 735-37. Further, Dr. Bert, in a treatment note from June 20, 2011, reported:

> This unfortunate woman has a known spinal stenosis at L2-3. She has been falling down and unable to function without the use of a cane. She has a lot of leg discomfort on the right and the left . . . [t]here is weakness on examination today. There is marked limitation of motion of her back and positive straight leg raise on the right . .

> . I reviewed her MRI from 2009 and it was
> clear at that point that she had moderate
> canal stenosis at L2-3, which is above her
> L3-L5 fusion. I believe this is a true
> transition syndrome progressively worsening
> with weakness . . . I am strongly
> recommending a decompression at L2-3.

Tr. 744. In October 2011, Dr. Bert found, among other things,

"marked limitation of motion . . . [in] back flexion and

extension." Tr. 740. Plaintiff then underwent a lumbar MRI on

November 18, 2011. Tr. 746-47. Dr. Bert reviewed the findings

and reported plaintiff had a "9-mm spinal canal at [L]2-3 with

foraminal stenosis." Tr. 738. He also noted decreased strength

in the left anterior thigh, left foot numbness, and positive

straight leg raising on the right. Id. The doctor concluded

plaintiff "has the ravages of progressive spinal stenosis." Id.

Thus, while the 2012 questionnaire is somewhat laconic, the

opinion goes beyond a bare conclusion, and Dr. Bert's treatment

notes from the time support his opinions. See Burrell v. Colvin,

775 F.3d 1133, 1140 (9th Cir. 2014). Therefore, the ALJ erred in

rejecting Dr. Burt's 2012 opinion.

The ALJ also found that Dr. Bert failed to adequately

address plaintiff's "increasingly more obvious symptom

exaggeration" around the time of his 2012 opinion. Tr. 111. As

described above, although plaintiff reported increasing

symptoms, it was Dr. Bert's opinion that they were related to progressively worsening transition syndrome in the area of her spine above her spinal fusion. Tr. 744. Further, the ALJ's assertion that plaintiff's symptoms were due to exaggeration was largely based on the ALJ's assessment of her "significantly diminished credibility" regarding subjective complaints and effort-dependent testing. Tr. 111. However, because the ALJ failed to give specific, clear and convincing reasons for discrediting plaintiff's testimony as explained above, that assessment is not a valid reason to discredit Dr. Bert's opinion.[3] Burrell, 775 F.3d at 1141 (citing Tommasetti, 533 F.3d at 1041).

Accordingly, the ALJ did not provide legitimate reasons supported by substantial evidence for giving little weight to Dr. Bert's 2012 assessment.

III. VE Testimony

Plaintiff argues that the ALJ's step four finding was erroneous because it did not account for the limitations set

---

[3] Defendant, in briefing, also notes that plaintiff's insurance declined to pay for the surgery recommended by Dr. Bert. Def.'s Br. 13. There are any number of reasons why an insurance company might decline to pay for a surgery, regardless of a plaintiff's disability status. The fact that an insurance company declined to cover a surgery, without more, is immaterial to the disability determination at issue.

Page 20 - Opinion and Order

forth in the discredited testimony of plaintiff and Dr. Bert.
Pl.'s Br. 20. As described above, the ALJ determined plaintiff
could perform work at a sedentary exertion level with additional
restrictions. Tr. 107. Based on the ALJ's RFC, the VE indicated
plaintiff was capable of performing her previous work as an
administrative clerk. Tr. 44, 111. Providing alternative step
five findings, the VE indicated plaintiff's RFC would allow her
to perform the occupations of cashier II (660 positions in
Oregon), microfilming document preparer (117 positions in
Oregon), and food and beverage clerk (less than 25 positions in
Oregon). Tr. 45, 112. When the ALJ posed hypothetical questions
applying the restrictions imposed by Dr. Bert, including an
hour-long break in addition to regular breaks and missing more
than two days per month, the VE indicated plaintiff would be
precluded from all sedentary work. Tr. 44.

However, as the ALJ's RFC did not include impairments set
forth by plaintiff through her testimony or by Dr. Bert's 2012
opinion, it was not based on substantial evidence and is
therefore invalid. Accordingly, all the jobs -- including
plaintiff's past relevant work and alternative step five jobs --
identified by the VE based upon the RFC were invalid.

IV. Remedy

Page 21 - OPINION AND ORDER

The ALJ erred in assessing the credibility of plaintiff's pain testimony and the weight provided to the treating physician's testimony in this case. Courts are empowered to affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Remand for the calculation of benefits is one possible remedy. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(citations omitted). The Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the record has been fully developed and further proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. Garrison, 759 F.3d at 1020.

Defendant argues that even if plaintiff's 2012 testimony and Dr. Bert's 2012 opinion were credited and plaintiff found disabled, remand would be necessary for further proceedings including calculation of an onset date. Def.'s Br. 15-16. The Ninth Circuit has repeatedly stated, "allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits

adjudication." Benecke, 379 F.3d at 595; Moisa v. Barnhart, 367
F.3d 882, 887 (9th Cir. 2004)("The Commissioner, having lost
this appeal, should not have another opportunity to show that
Moisa is not credible any more than Moisa, had he lost, should
have an opportunity for remand and further proceedings to
establish his credibility.")(citation omitted).

Here, the record does not require supplementation. In 2012,
plaintiff's treating physician outlined functional impairments
based on a recent MRI and examination findings. Tr. 734-37. The
ALJ failed to provide legally sufficient reasons for
discrediting Dr. Bert, who had a lengthy longitudinal record of
treating plaintiff. His opinion should therefore have been
afforded significant, if not controlling, weight. 20 C.F.R. §
404.1527; Holohan v. Massinari, 246 F.3d 1195, 1202 (9th Cir.
2001). The ALJ also failed to provide legally sufficient reasons
for discrediting plaintiff, who described her many problems
carrying out even basic housekeeping tasks, such as her
testimony that she must lay down for half an hour after washing
a small load of dishes. Tr. 37. Further, plaintiff has a long
and consistent history of severe back pain following two lumbar
surgeries, in addition to a range of other problems including
impairments which cause her to regularly fall at home and drop

Page 23 - OPINION AND ORDER

things. Tr. 29, 35.

Moreover, despite finding both plaintiff and Dr. Bert not credible, the ALJ determined plaintiff could only perform limited sedentary work, and only identified four jobs in the national economy she could perform. Tr. 112-13. Although the VE did not provide job numbers for plaintiff's past relevant work, the three alternative jobs plaintiff was found able to perform exist only in small numbers in the state economy. Tr. 112; see Beltran v. Astrue, 700 F.3d 386, 389-90 (9th Cir. 2012). Although not dispositive, certainly even fewer jobs exist in the part of the state where plaintiff resides. Thus, even if the improperly discredited evidence were only partially credited, it is reasonable to assume the already small job numbers would be diminished even further.

Finally, in reviewing the record as a whole, the court is satisfied that plaintiff is disabled. Both objective and testimonial evidence support a litany of severe impairments that affect her ability to function in the workplace. Tr. 105-106. In combination, and based on her own pain allegations and the opinion of her treating physician, these impairments would substantially limit her ability to succeed in even a sedentary position. Therefore, if the improperly rejected evidence were

Page 24 - Opinion and Order

credited as true, an ALJ would be required to find plaintiff disabled on remand. Accordingly, no further proceedings are necessary. Lingenfelter v. Astrue, 504 F.3d 1028, 1040-41 (9th Cir. 2007).

## CONCLUSION

For the reasons set forth herein, this case is REVERSED and REMANDED for immediate calculation and payment of DIB and SSI benefits.

IT IS SO ORDERED.

Dated this ___18th___ day of May 2015.

_____
Ann Aiken
United States District Court Judge